```
             UNITED STATES DISTRICT COURT
              DISTRICT OF NEW HAMPSHIRE
```

Tony L. Ellison

   v.                                          Civil No. 07-cv-131-JL
                                                      Opinion No. 2009 DNH 017

New Hampshire Department
of Correction, et al.

**O R D E R**

The plaintiff, a state prison inmate, brought this action under 42 U.S.C. § 1983 seeking monetary damages and equitable relief. He alleges that the defendants, various New Hampshire State Prison (NHSP) employees and administrators, endangered his safety and then failed to protect him from other inmates.[1] This court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

---

[1] Following the court's approval of the Magistrate Judge's preliminary review of this matter, to which the plaintiff did not object, all that remains of the plaintiff's original complaint is his claim that "defendants Biledeau and McGrath placed him in harm's way by recommending his transfer to the Hancock building, and that defendants Marquis, Whittan, Cunningham, Cattell, Crompton, and Wrenn, either directly, or indirectly as supervisory prison officials, failed to protect him from harm once he was on C-pod."

Presently before the court is the defendants' motion for summary judgment asserting that the plaintiff failed to properly exhaust his administrative remedies prior to filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (PLRA). After oral argument, and for the following reasons, the defendants' motion is granted.

## I.   Applicable legal standard

Summary judgment is appropriate if, viewing the record in the light most favorable to the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Noonan v. Staples, Inc., 539 F.3d 1, 5 (1st Cir. 2008). A material fact is one that, under the prevailing substantive law, affects the outcome of the case. See Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001). A genuine issue is one that is properly resolved only by a fact finder because it is one that reasonably could be decided in favor of either party. See id.

"[F]ailure to exhaust is an affirmative defense under the PLRA." Jones v. Bock, 549 U.S. 199, 216 (2007). The plaintiff

need not plead exhaustion in the complaint; rather, failure-to-exhaust must be asserted[2] by and proven by the defendant.  Id.

## II. Background

At all times relevant to this complaint, the plaintiff, Tony Ellison, was incarcerated at the New Hampshire State Prison in Concord, New Hampshire having pled guilty to several counts of felonious sexual assault.  On September 12, 2006, Ellison and another inmate got into a physical altercation during which Ellison suffered a large laceration to the side of his face.  Following the prison's investigation into this matter, and despite Ellison's claim that he was the victim, Ellison was charged with fighting as a disciplinary infraction under internal prison rules.

---

[2] While a prisoner is not required to plead and prove exhaustion in his complaint, "[n]othing in the Supreme Court's decision in Jones precludes a reviewing court from raising the issue of exhaustion sua sponte." Ghosh v. McClure, No. H-05-4122, 2007 WL 400648, at *6 n.3 (S.D. Tex. Jan. 31, 2007); see United States v. Del Toro-Alejandre, 489 F.3d 721, 723 (5th Cir. 2007); Okpala v. Drew, No. 06-16257, 2007 WL 2407040, at *1 (11th Cir. Aug. 24, 2007).

On September 29, 2006, Ellison filed the first in a series of inmate request slips regarding this incident.[3] In response to the complaint raised in this slip, which disputed the severity of the charge levied against him, see infra p. 9, the prison downgraded Ellison's charge to a lesser offense. He did not appeal this decision.

Ellison was tried before the NHSP disciplinary board on the reduced charge and found guilty. On October 25, 2006, he filed an inmate request slip purporting to appeal the hearing officer's guilty finding. This slip referenced an "attached argument" that is not before the court, and there is no other evidence as to what arguments were raised. Major Cunningham, a defendant in the present case, denied the appeal because he "saw no due process violations or excessive sanctions in regards to your D-report."

On November 9, 2006, Ellison filed another inmate request slip purporting to appeal his guilty finding, this time to the Warden. As part of his appeal, filed over eight weeks after the alleged assault, Ellison notified the prison for the first time of the factual basis underlying the constitutional claims he has since asserted in this lawsuit. More specifically, Ellison

---

[3] In the weeks and months following September 12, 2006, Ellison filed numerous inmate request slips, many of which are unrelated to the pending motion. The court will only address those complaints that are related and relevant to this case.

argued in this appeal that the Warden should "set aside this guilty verdict and all its penalties" because, among other reasons, prison employees unconstitutionally effectuated his transfer to an area of the prison that housed inmates known to pose a danger of violence to sexual offenders, and then failed to adequately protect him from those inmates.  The Warden affirmed Ellison's guilty finding, explaining that "after reviewing your case, I have found no due process violations or excessive sanctions."

Then, on November 28, 2006, Ellison wrote a letter to the Commissioner expressing his intent to sue the involved prison employees if the prison did not overturn his disciplinary report, amend its policies to better protect inmates, and punish those NHSP staff members and administrators involved in this matter.  The Commissioner upheld Ellison's guilty finding.  Dissatisfied with the prison's combined response to his grievances, Ellison sued the defendants in this court.  As stated earlier, see supra note 1, preliminary rulings have pared down Ellison's lawsuit to his constitutional endangerment and failure to protect claims.

### III. Analysis

Under the Prison Litigation Reform Act (PLRA), an inmate cannot maintain a § 1983 civil rights action challenging the

conditions of his confinement if he did not first exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Moreover, the PLRA requires "proper exhaustion," which means that the inmate must comply with all of the prison's "deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006); see also Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require") (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). In Woodford, the Supreme Court explained the rationale behind the proper exhaustion requirement:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules <u>unless noncompliance carries a sanction</u>. . . . For example, [if noncompliance carried no sanction] a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the

>             administrative process; the prisoner could
>             easily achieve this by violating other
>             procedural rules until the prison
>             administration has no alternative but to
>             dismiss the grievance on procedural grounds.
>             We are confident that the PLRA did not create
>             such a toothless scheme.

548 U.S. at 95 (emphasis added); see also Jones, 549 U.S. at 219 (noting that the benefits of exhaustion include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record"). Thus, "an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement." Farthing v. Ryan, No. 07-13225, 2008 WL 5377942, at *3 (E.D. Mich. 2008).

Under the NHSP's three-level grievance policy, an inmate may "seek formal review of an issue related to any aspect of [his] confinement," but is required to follow the policies, procedures, and deadlines for doing so, as set forth in the prison's Policy and Procedure Directive (PPD) 1.16 and the New Hampshire State Prison Inmate Manual. At the first level, the grievance procedure is set in motion if the aggrieved inmate files an inmate request slip within 30 days of the "date on which the

complained of event occurred."[4]  Id. at (IV)(A)(1) (Level 1).
But inmates are warned that "[t]he timeframes set out in this
policy are mandatory" and that "failure to comply with these
timeframes might impact [the inmate's] right to pursue any other
legal remedy."  Id. at (IV)(E) (emphasis in original).

At the second level of the grievance policy, an inmate
dissatisfied with the prison's response to his complaint may (and
thus must, to properly exhaust under the PLRA and Woodford)
appeal that response to the Warden of the facility.  See id. at
(IV)(B) (Level 2).  Each appeal must be submitted on a separate
"grievance form" and attached to "[a] copy of the [prison's]
level one response."  Id.  The policy warns inmates that "[t]he
use of the appropriate form"--an example of which is attached to
the grievance policy--"is mandatory."  Id. at (IV)(F) (emphasis
in original).  At the third and final level, the policy permits
(and thus requires, in order to properly exhaust under the PLRA
and Woodford) an inmate who is still dissatisfied with the
prison's response, after having timely raised his issue at the
first and second levels of the grievance process, to appeal the
Warden's decision to the Commissioner of the Department of

---

[4] Prior to filing a formal written complaint, the policy expects but does not require inmates to endeavor to resolve an issue through informal measures.  See PPD 1.16 at (I).

Corrections.  See id. at (IV)(C) (Level 3).  The policy again reminds inmates that an appeal must be filed on an appropriate "grievance form."  Id.

Ellison argues that he properly complied with the prison's grievance policy "with the first step being [the IRS he filed with] the Head of Security Major Cunningham."  (Pl.'s Opp'n to Mot. for Summ. J. ¶2).  He goes on to claim that he "appealed his case through all the proper channels of the chain of Command within the N.H.S.P." beginning with the appeal he filed with the Warden, followed by the "[t]hird and final step" of appealing to the Commissioner.  (Id.).

The undisputed facts in this case establish that Ellison failed to properly exhaust the administrative remedies that were available to him.  Although he unquestionably complained about and appealed issues that arguably encompassed the issue before the court in this federal lawsuit, his complaints and appeals did not constitute "proper exhaustion" under the PLRA as interpreted by the Supreme Court.  See Woodford, 548 U.S. at 90; Jones, 549 U.S. at 218 ("it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion").  As of September 12, 2006, the "date on which the complained of event occurred," Ellison had 30 days to file a first level inmate request slip apprising the prison of what he believed to be the

constitutional issue regarding his confinement.  See PPD 1.16 (IV)(A)(1).  He failed to do so.  Indeed, Ellison conceded at oral argument that he did not bring his constitutional claims to the prison's attention until November 9, 2006.

In the only timely filed complaint regarding the September 12, 2006 incident, filed on September 29, 2006, Ellison wrote:[5]

> I was served today 092906 with an A-Ticket for an Assault on another inmate.  How can this be when I never struck the other inmate, other than to push him off of me after I had already been struck down once.  Then I was struck down again to which my head was split open.  At most this should be a B-Ticket for mutual combat.  But this doesn't even hold water.  Is this A-Ticket a retaliatory ticket for the questioning of the integrity of the staff involved in this incident from the beginning with the move from South Unit to HNK?  Or that I questioned the integrity of Unit Manager Mr. Marquis?  When he made the statement as to that it is my fault I was beaten up for my coming to prison.  It amazes and bewilders me that for my being beaten up for being a sex offender and I'm being charged with the assault.

But this complaint--even allowing a broad, liberal reading of its last sentence--merely contested the propriety of the charge that was brought against him, and does not make any claim that prison employees knowingly housed him with dangerous inmates and then

---

[5] While Ellison filed a multitude of inmate request slips in the weeks and months following his altercation with another inmate, this complaint is the only one that was timely filed and addressed the alleged assault.

failed to protect him.  See PPD 1.16 (IV)(A) ("A request slip must contain sufficient detail to allow for investigation").

As already mentioned, Ellison believes that he fulfilled "the first step" in the proper exhaustion of his claims in an inmate request slip that he submitted on October 25, 2006.  But even if there was any evidence that this slip asserted the claims at bar in this suit--which there is none--he failed to file the slip until well after the 30 day window for doing so had expired.  See PPD 1.16 (IV)(A)(1).  By failing to bring these claims to the prison's attention in a timely manner, as dictated by the prison's policy, he failed to follow the "deadlines and other critical procedural rules" necessary for PLRA exhaustion.[6]  See

---

[6] While not raised by Ellison, the court recognizes that a prison that considers the substance of an untimely filed complaint and decides it on the merits may arguably be deemed to have waived its right to argue a failure-to-exhaust defense.  See Patel v. Fleming, 415 F.3d 1105, 1111 (10th Cir. 2005); Pozo, 286 F.3d at 1025 (noting that a prison's acceptance of an untimely complaint "makes the filing 'proper' for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court"); Ellis v. Vadlamudi, 568 F. Supp. 2d 778, 785 (E.D. Mich. 2008) (equating waiver to the procedural default doctrine utilized in habeas cases).  But such waiver applies only to those portions of an untimely complaint that the prison considered and decided on the merits.  See Patel, 415 F.3d at 1111 (holding that prison did not waive its failure-to-exhaust defense where it rejected the inmate's untimely complaint on procedural, as opposed to substantive, grounds).  Here, while the Warden and the Commissioner considered the untimely inmate request slips Ellison filed, they rejected his purported appeals on the basis that they found no due process violations or excessive sanctions attendant to his disciplinary hearing.  There is no evidence that the

Woodford, 548 U.S. at 90; see also Tauer v. Werholtz, No. 05-3196, 2006 WL 446069, at *3 (10th Cir. 2006) ("a time-barred grievance is not considered exhausted"); Pozo, 286 F.3d at 1023 ("unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred").

 Even assuming, arguendo, that Ellison filed a timely inmate request slip grieving his constitutional claims, none of his appeals before the court were filed on the required forms. See PPD 1.16 (B), (C) (notifying inmates that appeals must be filed on grievance forms, as opposed to inmate request slips, both of which are attached to the policy itself); see also Farthing, 2008 WL 5377942, at *3 (dismissing complaint where plaintiff failed to use the appropriate forms called for under the prison's grievance policy). This is not merely the elevation of form over substance; use of the proper form facilitates the correctional administrators' assessment and analysis of an appeal's content, and apprises them of the events and prior grievance and complaint procedures it arises from and to which it relates back. Because these untimely filed, improperly submitted complaints and appeals

---

prison either considered or decided Ellison's endangerment and failure to protect claims; therefore, the court finds that the defendants did not waive their failure-to-exhaust defense with respect to those claims.

did not constitute proper exhaustion under the PLRA and Woodford, 548 U.S. at 90, the defendants are entitled to judgment as a matter of law.

The court will briefly touch upon two other arguments raised by Ellison. First, he argues that any mistakes he made in exhausting his claims should be excused because "[a]s a Sui Juris Plaintiff representing himself and not being educated in the law" he "cannot be held to want of form." (Pl.'s Opp'n to Mot. for Summ. J. ¶1). But as the 7th Circuit Court of Appeals has pointed out, "the PLRA does not permit liberalized standards for pro se plaintiffs on the theory of 'substantial compliance' with exhaustion requirements." Conway v. Thurmer, No. 01-2837, 2002 WL 1370051, at *2 (7th Cir. June 24, 2002); see also Woodford, 548 U.S. at 103 (noting that an inmate's argument that "requiring proper exhaustion is harsh for prisoners, who generally are untrained in the law and are often poorly educated . . . overlooks the informality and relative simplicity of prison grievance systems"). Since the vast majority of claims subject to the PLRA exhaustion requirement are brought by pro se plaintiffs, excusing them from the requirements would be tantamount to eliminating it altogether. Second, Ellison argues that he should not be held to the strict requirements of the grievance policy because "the very Grievance forms needed are in

the possession and control of the very Unit Managers in which the Plaintiff was Grieving.  He felt his safety was in jeopardy."  It is true that in situations where an inmate believes that filing a first level grievance may subject him to harm, the policy allows him to skip the request slip process and immediately file an emergency grievance with the Warden.  See PPD 1.16(IV)(A)(4); Inmate Manual, § D(3).  But notwithstanding the fact that an inmate must apply for, and be granted, a waiver before filing an emergency grievance, see PPD 1.16 (IV)(A)(4), this exception does not help Ellison here.  As Ellison conceded at oral argument, he was in fact able to obtain and file numerous inmate request slips soon after the incident underlying his complaint, including three in the 30 days following his altercation,[7] and he makes no claim that he had any difficulty obtaining them.

## V.  Conclusion

Even after reviewing the record in the light most favorable to Ellison, the court discerns no evidence to suggest that he properly exhausted his administrative remedies with regard to the claims involved in this litigation.  See Woodford, 548 U.S. at 90.  The defendants' motion for summary judgment (document no.

---

[7] The record shows that Ellison filed at least 22 inmate request slips in the year following September 12, 2006.

14

55) on their failure-to-exhaust defense is therefore granted. Ellison's claims are dismissed without prejudice. All other pending motions are denied as moot. The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

/s/ Joe Laplante
Joseph N. Laplante
United States District Judge

Date: February 19, 2009

cc: Tony L. Ellison, pro se
    Danielle Leah Pacik, Esq.